# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| Kelsey McBrayer, Kayla Poole, and | ) | |
| Katie Simmons, on behalf of themselves | ) | |
| and all others similarly situated, | ) | |
| | ) | |
| **Plaintiffs,** | ) | Civil Action No.: |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| BAL TK, LLC, d/b/a The Tilted Kilt | ) | |
| | ) | |
| **Defendant.** | ) | |

## COLLECTIVE ACTION COMPLAINT

Kelsey McBrayer, Kayla Poole, and Katie Simmons, on behalf of themselves and all others similarly situated, allege the following as their Collective Action Complaint:

## I. INTRODUCTION

1.     This is a collective action brought on behalf of "Tipped Employees" who work or have worked at the restaurant in Birmingham, Alabama, operating under the trade name "The Tilted Kilt," located at 14 Perimeter Park So., Birmingham, Alabama 35243.  The Tilted Kilt is owned and operated and/or managed by Defendant BAL TK, LLC (collectively "Defendant" or "Tilted Kilt").

2.     The Tilted Kilt employs waiters, waitresses, and bartenders (collectively, "Tipped Employees") who are subjected to Defendants' unlawful pay practices.

3.     As explained in detail below, The Tilted Kilt systematically and willfully denies Tipped Employees wages due and owing under the Fair Labor Standards Act, 29 U.S.C. § 201, *et.seq.* ("FLSA").

4.     As set forth below, Defendant violated the aforementioned laws by failing to satisfy the notice requirements of the tip credit provisions of the FLSA and failing to ensure that Tipped Employees earn the mandated minimum wage when taking the tip credit.

5.     Moreover, Defendants failed to pay Tipped Employees for all their compensable time.  Defendant failed to pay Plaintiffs and other Tipped Employees for the time it took these individual to don and off their employer-mandated uniforms.

6.     Defendant also required its Tipped Employees to effectively purchase their employer-mandated uniforms which drove the Tipped Employees' pay rate for the pay period in which the uniform was purchased below the minimum wage.

7.     In addition, while taking the tip credit, Defendant failed to pay the Tipped Employees for the hours worked.  In other words, the $2.13 per hour the Tipped employees were to be paid while working as tipped employees was not paid.

8.     Due to Defendant's unlawful practices concerning gratuities, including its

failure to properly inform Tipped Employees of its intention to utilize a "tip credit" and specifying the precise amount it was taking, and failing to guarantee that Tipped Employees earned sufficient tips to claim the tip credit, Defendant has improperly applied a "tip credit" against the wages paid to Plaintiff and current and former Tipped Employees, thus paying them less than the mandated minimum wage.

9.    As a result of the aforementioned pay practices, Plaintiffs and the members of the Class (defined below) were illegally under-compensated for their work.

## SUMMARY OF CLAIMS

10.    Plaintiffs bring this action as a collective action to recover unpaid wages, pursuant to the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq.* ("FLSA" or the "Act").

11.    In particular, Plaintiff brings this suit on behalf of the following similarly situated persons:

> All current and former Tipped Employees who have worked for Defendant at The Tilted Kilt in Birmingham, Alabama at 15 Perimeter Park So., within the statutory period covered by this Complaint, and elect to opt-in to this action pursuant to the FLSA, 29 U.S.C. § 216(b) ("the Class").

12.    Plaintiffs allege on behalf of the Class that they are: (i) entitled to unpaid

3

minimum wages from Defendant for hours worked for which Defendants failed to comply with all the requirements necessary to claim the tip credit and pay the mandatory minimum wage, as required by law; and (ii) entitled to liquidated damages pursuant to the FLSA, 29 U.S.C. § 201 *et seq.*

## **PARTIES**

13. Plaintiff Kelsey McBrayer is a resident of Jefferson County, Alabama, is over the age of nineteen (19), and was employed by Defendant as a Tipped Employee at the Birmingham Tilted Kilt from in or about March of 2013 through December of 2014, who Defendant failed to compensate properly for all hours worked.

14. Plaintiff Kayla Poole is a resident of Jefferson County, Alabama, is over the age of nineteen (19), and was employed as a Tipped Employee from July of 2016 through November of 2016, who Defendant failed to compensate properly for all hours worked.

15. Plaintiff Katie Simmons is a resident of Jefferson County, Alabama, is over the age of nineteen (19), and was employed as a Tipped Employee from March of 2011 until October of 2015, who Defendant failed to compensate properly for all hours worked.

16. Pursuant to Section 216(b) of the FLSA, Plaintiffs have consented in writing to be Plaintiffs in this action. Their executed Consent to Sue forms are

attached hereto as Exhibits A – C.

17.     Defendant BAL TK, LLC, is a limited liability company that operates a restaurant under the trade name The Tilted Kilt located at 14 Perimeter Park So., Birmingham, Alabama 35243.  At all relevant times during the statutory period covered by this Complaint, Defendant has transacted business at this location.

## JURISDICTION AND VENUE

18.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 201 *et seq*.

19.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(ii) as a substantial part of the acts or omissions giving rise to the claims alleged herein occurred within this judicial district, and Defendant is subject to personal jurisdiction in this district.

20.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## FACTUAL ALLEGATIONS

21.     The crux of the FLSA is: (1) that all employees are entitled to be paid mandated minimum wages for all hours worked; and (2) that all gratuities earned are the property of the employees.

22.     Contrary to these basic protections, Plaintiffs and the members of the

Class were: (1) deprived of the mandated minimum wage for all hours they worked; and (2) forced to improperly share a percentage of their gratuities with Defendant to reimburse Defendant for its ordinary business expenses.

23. Plaintiffs and the members of the Classes are, or were, Tipped Employees employed by Defendant.

24. Plaintiffs typically worked shifts lasting anywhere from six (6) to twelve (12) hours. They typically worked anywhere from three (3) to six (6) shifts per week and worked, on average, approximately twenty (20) hours or more per week.

25. Tilted Kilt typically had two shifts per day. The shifts began at 11:00, and the evening shifts began at 4:00 or 5:00, or 6:00. However, the Tipped Employees had to work longer than those hours, and did not get paid for the hours worked. Moreover, they did not even get paid the tipped wage for the time worked.

26. The Tipped Employees, by policy and per management direction, were required to wear a company mandated uniform. The Tipped Employees were not allowed to wear this uniform to the restaurant, but had to change on the premises. Each Tipped Employee had to work at least 30 minutes off of the clock before their shift. For instance, if a Tipped Employed worked a shift beginning at 4:00 p.m., she was required to arrive at 3:30. The Tipped Employees needed to arrive by at least 3:30 to put on their uniforms, and to do their hair and makeup to the satisfaction of the

manager on duty. They had to satisfy the manager that they were "camera ready", and if hair and makeup did not meet this standard, they would be sent back to a dressing room to correct it/reapply cosmetics. They had to do this before the pre-shift meeting, which was approximately fifteen (15) minutes before the shift was supposed to start.

27.    The Tipped Employees were not paid for this time at all.  In fact, their time was not recorded until they were clocked in by a supervisor, usually when they served the first customer. Using the 4:00 p.m. shift as an example, a Tipped Employee may not get clocked in until a significant time after 4:00.

28.    During the half hour before shifts when they had to don their uniforms, and do their hair and make-up, and have the pre-shift meeting, the Tipped Employees should have been paid the minimum wage of $7.25 per hour because they were not serving customers at the time.

29.    Not only were the Tipped Employees not paid the required $7.25 for this off the clock work, but they were not paid the $2.13 per hour tipped employee rate for the hours worked on the clock.

30.    When the Tipped Employees received what should have been their bi-weekly pay checks, they would receive a pay stub indicating hours worked and withholdings, but the "check" they got for the $2.13 per hour they were supposed to be receiving was marked "VOID", and could not be negotiated by the Tipped

Employees.

**Defendant's Uniform Policy**

31.    Tipped Employees were required to purchase a uniform at the start of their employment with Defendants.  These uniforms consisted of a kilt, knee high socks, blouse, and brassier.  Defendant deducted in excess of $100.00 from Tipped Employees' initial check(s) to cover the cost of uniforms.

32.    Tipped Employees were forbidden from wearing their uniform outside of Defendant's premises. Rather, Defendant required its Tipped Employees/ Entertainers be "camera or stage ready" at the start of their assigned shift after dressing at the restaurant.

33.    Accordingly, Tipped Employees were required to effectively come in at least thirty minutes before the start of their shift in order to have sufficient time to change into their uniforms and attend the pre-shift meeting. Tipped Employees were not clocked-in during the time it took them to prepare for their shift and attend the pre-shift meeting.

34.    Similarly, Tipped Employees were required to clock out at the end of their shifts before changing out of their uniforms and leaving for the evening. It took Plaintiffs, on average, approximately ten (10) minutes to change out of their uniforms and into street attire.

35.     Pursuant to Defendant's uniform policies and practices, Tipped Employees were not compensated for the time spent donning and doffing their uniforms.

**Uncompensated Pre-shift Meetings**

36.     Defendant's practice was to have mandatory pre-shift meetings in which Tipped Employees were apprised of daily specials, promotional activities, or other relevant information.

37.     It was policy that Tipped Employees clock in after the mandatory pre-shift meeting. This practice lowered the amount of time recorded into the payroll system.

**The Tip Credit Provision & Requirements**

38.     Rather than pay its Tipped Employees the applicable minimum wage, the Defendant chose to take a tip credit and pay these employees less than the applicable minimum wage.

39.     Under applicable law, in certain circumstances, it is permissible for an employer to take a tip credit and pay its employees less than minimum wage, provided that the employee's tips received from customers plus the tip credit paid by the

employer equals at least the applicable minimum wage.[1]

40.     According to the Department of Labor's ("DOL") Fact Sheet #15: Tipped

Employees Under the Fair Labor Standards Act (FLSA) ("Fact Sheet #15"):

> the maximum tip credit that an employer can currently
> claim under the FLSA is $5.12 per hour (the minimum
> wage of $7.25 minus the minimum required cash wage of
> $2.13).

41.     As is made plain in Fact Sheet #15, in order to claim a tip credit, the

employer must notify its employees of its intention to take the tip credit and must also

inform its employees that all tip received by the employee are to be retained by the

employee (except for those tips that are part of a valid tip pooling arrangement).

42.     Moreover, an employer must explicitly notify the employee as to the

amount of the tip credit and inform the employee that the employee must still earn the

mandated minimum of $7.25 per hour between the amount of the tip credit taken by

the employer and the amount of tips earned by the employee.

43.     An employer bears the burden of showing that it has satisfied the

notification requirement of informing its employees that tips are being credited against

---

[1] An employer is not relieved of their duty to pay an employee wages at least equal to the
minimum wage by virtue of taking a tip credit or by virtue of the employee receiving tips from
customers in an amount in the excess of the applicable minimum wage.  That is, an employer in
the restaurant industry must pay the employee wages at least equal to the minimum wage or
equal to the minimum wage less the tip credit provided the tips claimed exceed the tip credit.
Under no circumstances is the employer relieved of paying at least the minimum wage for all

the employee's hourly wage.[2] If an employer cannot demonstrate its compliance with this notification requirement, no credit can be taken and the employer is liable for the full minimum wage.

44.     Further, where a tipped employee earns less in tips than the tip credit claimed, the employer is required to make up the difference. Stated another way, if a tipped employee earns less than $5.12 per hour in tips (the maximum tip credit permissible where the employer pays the employee $2.13 per hour), the employer must raise that tipped employee's hourly case component the necessary amount above $2.13 per hour so as to ensure that the employee earns at least $7.25 per hour – the mandated minimum wage.

**Defendant's Failure to Notify Tipped Employees**

45.     As explained above, the DOL has very specific requirements regarding what an employer must notify his/her employee of if that employer intends to claim a tip credit.

46.     Rather than comply with the notification requirements set forth in Fact Sheet #15, Defendant chose to simply take the tip credit without explaining it to its

---

hours worked, regardless of how much an employee earns in tips.
[2] Courts have strictly construed this notification requirement. Accordingly, some courts have held that a generic governmental poster (which is required by the DOL) does not satisfy the tip credit notification requirement.

Tipped Employees. In short, Defendant failed to inform its Tipped Employees of: (i) the intention to take the tip credit, (ii) the amount Defendant intended to claim as a tip credit, and (iii) that all tips are to be retained by the Tipped Employee.

47. Courts across the country have held that where an employer fails to satisfy any one of the notification requirements, that employer forfeits the tip credit and must pay the employee the full minimum wage.

48. Indeed, Plaintiffs do not ever recall being notified by Defendant that they intended to take a "tip credit," nor how much that amount would be. Plaintiffs never heard the term "tip credit" while working at Tilted Kilt.

**Defendant's Failure To Ensure Tipped Employees Earned The Full Minimum Wage**

49. During the course of Plaintiffs' employ, there were shifts worked by Plaintiffs where, despite working a full shift (consisting of six hours or more), they earned less than $25 in tips. Indeed, Plaintiffs can recall several instances where they earned below the amount that would make up the difference between the $2.13 tipped rate and the $7.25 minimum wage, per hour, and still had to tip out other employees, leaving a pittance for a full shift of work.

50. In contravention of applicable law, when Plaintiffs and other Tipped Employees earned little or no tips, Defendant did not raise a Tipped Employee's

hourly wage to ensure that said employee earned at least the minimum wage.

51.    Defendant made no efforts to comply with applicable minimum wage requirements. Instead, Defendant's computer program required Plaintiffs and other Tipped Employees to claim credit card tips even if they did not receive such tips as they were required to participate in a tip pool. For example, if Plaintiffs worked a shift and only had one $10.00 tip that they received from a customer's credit card, Defendant required Plaintiffs to declare that $10.00 tip even though Defendant required Plaintiff to pay a portion of that amount into the tip pool.

52.    Further, as set forth above, Defendant failed to confirm that Plaintiffs and other Tipped Employees earned at least the minimum requirement in tips to ensure Plaintiffs and other Tipped Employees earned at least the minimum wage for every hour worked.

53.    Consequently, Defendant wholly failed to ensure that Tipped Employees were earning at least the applicable minimum wage for every hour worked.

54.    As DOL Fact Sheet #15 makes clear, an employer can only take the tip credit where it properly notifies its employees of their intention to claim the tip credit and, despite taking the tip credit, ensures that its employees actually earn at least the applicable minimum wage.

55.    Because Defendant has failed to notify its Tipped Employees that they

intended to claim the tip credit and failed to ensure Tipped Employees earned at least the applicable minimum wage for every hour worked, Plaintiffs and the other Tipped Employees are owed the full minimum wage for every hour worked.

**Tipped Employees Did Not keep All Tips**

56. The FLSA provides that in order to be eligible for a tip credit, employers of tipped employees must either allow employees to keep all the gratuities that they receive or forgo the tip credit and pay the employee the full hourly minimum wage.[3]

57. Importantly, "[t]ips are the property of the employee whether or not the employer has taken a tip credit under section 3(m) of the FLSA." 29 C.F.R. § 531.52.

58. Defendant's Tipped Employees however have not retained all gratuities left by customers.

59. Pursuant to Defendant's policies and guidelines, Tipped Employees were required to reimburse Defendant for any customer walkouts from their tips. That is, when a customer walked of a restaurant without paying, Tipped Employees would have to pay out of their tips. Further, if a Tipped Employee's "wallet" was short, Defendant required that Tipped Employee to make up the difference.

60. Because the Plaintiffs and Tipped Employees have not been permitted to

---

[3] In certain limited circumstances not at issue here, tipped employees are permitted to participate in a tip pool. *See* Fact Sheet #15.

retain the total proceeds of their gratuities permitted under the law, Defendant is not eligible to claim the "tip credit" against the minimum wage, and thus is obligated to pay Plaintiffs and Tipped Employees the full minimum wage for every hour worked.

61.     As a result, Plaintiff and Tipped Employees have been unlawfully deprived of their full gratuities due to Defendant's policy regarding walk outs, in violation of the FLSA and Alabama State Laws.

62.     Due to the foregoing pay practices, including specifically requiring Tipped Employees to cover the cost of walkouts and pay for cash shortages, Defendants are effectively disqualified from taking the tip credit.

**Defendant's Uniform Policy Drove Tipped Employees' Pay Below The Minimum Wage**

63.     Tipped Employees are also required to bear the costs of such overhead expenses as uniforms.

64.     As set forth above, Defendant required its Tipped Employees to purchase two employer-mandated uniforms over approximately $100.00 prior to commencing their employ with Defendant. While, ostensibly this money was reimbursed to the Tipped Employee when she left Defendant's employ upon surrendering of the intact uniforms, the cost was initially deducted from a Tipped Employee's pay until the cost

was covered.

65.     As a consequence of the foregoing, the Tipped Employee's pay rate for the pay period in which the uniform was purchased fell below the mandated minimum wage.

66.     Due to Defendant's practices described above, Tipped Employees have been deprived of payments to which they are entitled.

67.     Defendant has been unjustly enriched to the detriment of the Classes by: (i) requiring Tipped Employees to reimburse Defendant for its business losses; (ii) requiring Tipped Employees to reimburse Defendant for its ordinary business expenses; (iii) paying Tipped Employees less than the mandated minimum wage while failing to comply with the requirements for doing so; and (iv) failing to pay Tipped Employees for all hours worked.

68.     Evidence generally reflecting the number of uncompensated hours worked by Tipped Employees is in the possession of Defendant.

69.     While Plaintiffs are unable to state at this time the exact amount owed to the Classes, Plaintiffs believe that such information will become available during the course of discovery through Defendant's records. Regardless of the foregoing, when an employer fails to keep complete and accurate time records, employees may establish the hours worked solely by their testimony and the burden of overcoming

such testimony shifts to the employer. *See* <u>Anderson v. Mt. Clemons Pottery Co.</u>, 328 U.S. 680 (1946).

## **CLASS & COLLECTIVE ACTION ALLEGATIONS**

70.     Plaintiffs bring this action as a collective action pursuant to the Fair Labor Standards Act, 29, U.S.C. §§ 207 and 216(b) on behalf of the following class:

> All current and former Tipped Employees who have worked for Defendant at The Tilted Kilt in Birmingham, Alabama at 15 Perimeter Park So., within the statutory period covered by this Complaint, and elect to opt-in to this action pursuant to the FLSA, 29 U.S.C. § 216(b) ("the Class").

71.     The claims under the FLSA may be pursued by those who opt-in to this case pursuant to 29 U.S.C. § 216(b).

72.     Plaintiffs will fairly and adequately protect the interest of the Classes as their interests are in alignment with those of the members of the Classes.  Plaintiffs have no interests adverse to the Classes they seek to represent, and have retained competent and experienced Counsel.

73.     The collective action mechanism is superior to other available methods for a fair and efficient adjudication of the controversy. The damages suffered by individual members of the Class may be relatively small when compared to the expense and burden of litigation, making it difficult for members of the Class to

individually seek redress.

74.     Plaintiffs and the Class have suffered and will continue to suffer irreparable damage from the illegal policy, practice and custom regarding Defendant's pay practices. These practices are uniform, and apply in the same manner to each member of the Class such that they are similarly situated pursuant to 219 U.S.C. § 216(b).

75.     Defendant has violated and, continues to violate, the FLSA, 29 U.S.C. §§ 201 *et seq*. The foregoing conduct, as alleged, constitutes a willful violation fo the FLSA within the meaning of 29 U.S.C. § 255(a).

## COUNT I
## CLAIM FOR RELIEF
## FAIR LABOR STANDARDS ACT MINIMUM WAGE VIOLATIONS
### (On Behalf of Plaintiffs and the Collective Class)

76.     Plaintiffs, on behalf of themselves and the Collective Class, reallege and incorporate by reference the paragraphs above as if they were set forth again herein.

77.     At all relevant times, Defendant has had gross revenues in excess of $500,000.00 per annum.

78.     At all relevant times, Defendant has been and continues to be, an employer engaged in interstate commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

79.     At all relevant times, Defendant has employed, and/or continues to employ, Plaintiffs and each of the Collective Class Members within the meaning of the FLSA.

80.     Pursuant to Defendant's compensation policies, rather than pay Tipped Employees the federally-mandated minimum wage, Defendant took a tip credit and paid Tipped Employees only the tip-credit wage.

81.     At relevant times in the period encompassed by this Complaint, Defendant has a willful policy and practice of requiring Tipped Employees to surrender a portion of their tips to Defendants to cover case shortages and walk outs.

82.     At relevant times in the period encompassed by this Complaint, Defendant has a willful policy and practice of failing to satisfy the notification requirements in order for Defendant to claim the tip credit.

83.     At relevant times in the period encompassed by this Complaint, Defendant has a willful policy and practice of requiring Tipped Employees to work off-the-clock. When this time is properly accounted for, Tipped Employees were paid less than the required case component of the tip credit. At all relevant times Plaintiffs and the Class were not paid even the fixed wage of $2.13 for hours worked. However, because the tip credit was not properly applied, Plaintiffs and the Class are entitled to $7.25 for every hour worked.

84.     As a result of the Defendant's willful practices, Defendant was not entitled to pay Plaintiffs and the members of the Collective Class less than the mandated minimum wage for all hours worked.

85.     Defendant has violated and, continues to violate, the FLSA, 29 U.S.C. §§ 201 *et seq*. The Foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

86.     Due to Defendant's FLSA violations, Plaintiffs, on behalf of themselves and the members of the Collective Class, are entitled to recover from Defendant, compensation for unpaid wages; an additional equal amount as liquidated damages; and reasonable attorneys' fees and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

### COUNT II
### CLAIM FOR RELIEF
### ALABAMA COMMON LAW UNJUST ENRICHMENT
**(On Behalf of Plaintiffs and the Collective Class)**

87.     Plaintiffs, on behalf of themselves and the Collective Class Members, reallege and incorporate by reference the paragraphs above as if they were set forth again herein.

88.     Plaintiffs and members of the Class were employed by Defendant within the meaning of the Alabama state laws.

89. At all relevant times, Defendant had a willful policy and practice of denying Tipped Employees their full share of gratuities.

90. During the class period covered by this Complaint, Plaintiffs and Tipped Employees were subjected to unlawful deductions from their gratuities.

91. Defendant retained the benefits of its unlawful deductions from the gratuities from Plaintiffs and Tipped Employees under circumstance which rendered it inequitable and unjust for Defendant to retain such benefits.

92. Defendant was unjustly enriched by subjecting Plaintiff and Tipped Employees to such unlawful deductions.

93. As direct and proximate result of Defendant's unjust enrichment, Plaintiffs and the members of the Class have suffered injury and are entitled to reimbursement, restitution and disgorgement from Defendants of the benefits conferred by Plaintiff and the Class.

94. Plaintiffs, on behalf of themselves and the members of the Class are entitled to reimbursement, restitution and disgorgement of monies received by Defendant.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and/or on behalf of themselves and all other similarly situated members of the Collective Class respectfully request the Court

grant the following relief:

A.   Designation of this action as a collective action on behalf of the Collective Class, and prompt issuance of notice pursuant to 29 U.S.C. § 216(b), apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

B.   Designation of Plaintiffs' counsel as a class counsel for the Collective Class;

C.   A declaratory judgment that the practices complained of herein are unlawful under the FLSA;

D.   An injunction against Defendant and its officers, agents, successors, employees, representatives and any and all persons acting in concert with it, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

E.   An award of unpaid minimum wages to Plaintiffs and the members of the Class;

F.   Restitution of wages and gratuities improperly retained by Defendant;

G.   An award of liquidated damages to Plaintiffs and members of the Class;

H.   An award of costs and expenses of this action together with reasonable attorneys' and expert fees to Plaintiffs and members of the Class; and

I.   Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs

hereby demand a trial by jury on all questions of fact raised by the Complaint.

Respectfully submitted,

 /s/ Brian M. Clark
Brian Clark (CLA093)
(ASB-5319-r78b)
Attorney for Plaintiffs

**OF COUNSEL:**
Wiggins Childs Pantazis Fisher & Goldfarb
The Kress Building
301 19th St. No.
Birmingham, Alabama 35203
Telephone:  (205) 314-0500
Fax:         (205) 254-1500
bclark@wigginschilds.com

Allan L. Armstrong
Armstrong Law Center, LLC
The Berry Building
2820 Columbiana Road
Vestavia Hills, Alabama 35216

Darrell Cartwright
Cartwright Law Center
The Berry Building
2820 Columbiana Road
Vestavia Hills, Alabama 35216

**Serve Defendant via Certified Mail:**
BAL TK, LLC
Registered Agent: Alton B. Parker, Jr.
2117 Second Avenue North
Birmingham, AL  35203


/s/ Brian M. Clark